I.D. 6184814

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEFFREY KRAMAN, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| V. | ) |
| | ) |
| THOMAS HOSKINSON, # 233, individually and as agent, | )1:16-cv-04960 |
| servant or employee of the Mount Prospect Police Department | ) |
| of the Village of Mount Prospect, | ) |
| UNKNOWN MOUNT PROSPECT OFFICERS, | )Hon. Mathew F. Kennelly |
| LLOYD MILLER, individually and as agent, servant or | ) |
| employee of Mount Prospect Fire Department of the | ) |
| Village of Mount Prospect, | ) |
| UNKNOWN FIRE DEPARTMENT PERSONNEL, and | ) |
| VILLAGE OF MOUNT PROSPECT, | )PLAINTIFF DEMANDS |
| | )        JURY TRIAL |
| Defendants. | ) |

## SECOND AMENDED COMPLAINT

**NOW COMES** the Plaintiff, JEFFREY KRAMAN ("hereinafter also referred to as "KRAMAN" and "Plaintiff"), by and through his attorneys, and complaining of Defendants, THOMAS HOSKINSON, individually and as agent, servant or employee of the Mount Prospect Police Department of the Village of Mount Prospect, LLOYD MILLER, individually and as agent, servant, or employee of Mount Prospect Fire Department of the Village of Mount Prospect, UNKNOWN MOUNT PROSPECT OFFICERS, and VILLAGE OF MOUNT PROSPECT, alleges as follows:

1

**COUNT I**
**AGAINST OFFICER HOSKINSON AND VILLAGE OF MOUNT PROSPECT**
**NEGLIGENCE: SPOLIATION OF EVIDENCE**

**JURISDICTION AND VENUE**

1. The Court has subject matter jurisdiction of Plaintiff's claims pursuant to 28 U.S.C. Sections 1346, 2860 and 42 U.S.C. § 1983 and 1988; the Judicial Code, 28 U.S.C. §§1331 and 1343 (a); the Constitution of the United States; and supplementary jurisdiction, as codified in 28 U.S.C. §1367(a). This Court has personal jurisdiction over the individual Defendants as each of them are believed to be residents of Illinois and all actions complained of herein occurred in Illinois.

2. Venue is proper in this District because all the conduct complaint of herein occurred in this District.

**PARTIES**

3. JEFFREY KRAMAN, is, and at all times material was, a citizen of the State of Illinois and the United States.

4. THOMAS HOSKINSON and Defendants UNKNOWN POLICE OFFICERS were employed by MOUNT PROSPECT POLICE DEPARTMENT OF THE VILLAGE OF MOUNT PROSPECT (hereinafter also referred to as "MP POLICE"), on May 10, 2015, the date JEFFREY KRAMAN alleges said employee committed the misconduct complained of herein.

5. Defendant VILLAGE OF MOUNT PROSPECT is an incorporated municipality and is the employer of the above referenced Defendant, THOMAS HOSKINSON and Defendants UNKNOWN MOUNT PROSPECT OFFICERS. At all times material to this

2

Complaint, THOMAS HOSKINSON and UNKNOWN MOUNT PROSPECT OFFICERS were acting under color of state law, ordinance and/or regulation, statutes, customs and usage of MP POLICE.

6. LLOYD MILLER and UNKNOWN FIRE DEPARTMENT PERSONNEL were employed by MOUNT PROSPECT FIRE DEPARTMENT OF THE VILLAGE OF MOUNT PROSPECT (hereinafter also referred to as "MP FIRE"), on May 10, 2015, the date JEFFREY KRAMAN alleges said employee committed the misconduct complained of herein.

7. Defendant VILLAGE OF MOUNT PROSPECT is an incorporated municipality and is the employer of the above referenced Defendant LLOYD MILLER and Defendants UNKNOWN FIRE DEPARTMENT PERSONNEL. At all times material to this Complaint, LLOYD MILLER and UNKNOWN FIRE DEPARTMENT PERSONNEL were acting under color of state law, ordinance and/or regulation, statutes, customs and usage of MP FIRE.

8. At all times, it was the duty of Defendant MP POLICE to properly train its officers so as to avoid misconduct and the use of unreasonable force.

9. At all times, it was the duty of Defendant MP FIRE to properly train its employees so as to protect people by providing emergency medical service and to put the health and welfare of patients being treated in its ambulances above nonemergency police matters.

10. On May 10, 2015, Plaintiff was driving his vehicle with an ultimate destination of a Mother's Day family get-together.

11. While enroute to his ultimate destination, Plaintiff, who has a history of heart condition, began experiencing atrial fibrillation.

3

12. Defendant Hoskinson began to pull over Plaintiff at or about 300 W. Central, Mount Prospect, Illinois, wherein:

    a. Defendant Hoskinson and Defendant Unknown Mount Prospect Officer, who arrived during the traffic stop, recorded the traffic stop of Plaintiff in accordance with department policy;

    b. Plaintiff exited his vehicle and informed Defendant Hoskinson that he was experiencing atrial fibrillation and asked for an ambulance;

    c. Defendant Hoskinson called for an ambulance and asked Plaintiff for his driver's license and proof of insurance after which time other Defendants Unknown Mount Prospect Officers and Unknown Fire Department Personnel arrived;

    d. Plaintiff gave Defendant Hoskinson a valid driver's license and proof of insurance;

    e. Defendant Hoskinson then saw coffee makers in the back of Plaintiff's van and said the covering over the merchandise looked like it was covering a dead body;

    f. Defendant Hoskinson opined that Plaintiff was a thief and informed Plaintiff that he was being detained;

    g. Plaintiff informed Defendant Hoskinson that the items in his vehicle were part of his business and showed Officer Hoskinson his receipts for the merchandise;

    h. Plaintiff was asked come out of the ambulance so that Plaintiff's vehicle could be searched; Plaintiff refused to allow a search;

    i. Defendant Lloyd Miller of Defendant MP Fire and other Defendants Unknown Fire Department Personnel stopped treating Plaintiff, although recognizing that Plaintiff was experiencing atrial fibrillation and wanted to go to the hospital, so that Defendant Hoskinson could search Plaintiff's vehicle;

    j. Defendant Hoskinson searched Plaintiff's vehicle and found only Plaintiff's merchandise, which Plaintiff had receipts for; but Defendant Hoskinson caused another Defendant Unknown Mount Prospect Officer or Defendant Unknown Fire Department Personnel to make a call to the store were the items were bought to verify that Plaintiff bought the items;

    k. Defendant Hoskinson then demanded why Plaintiff had water in his vehicle and Plaintiff explained that it was drinking water for Plaintiff to drink;

l.  Defendant Hoskinson then instructed Plaintiff to move his vehicle before he was to get back into the ambulance;

m.  Defendant Hoskinson then informed Plaintiff that he was giving Plaintiff tickets for a mopery violation, having a plastic cover over his license plate, and not having a front license plate on the vehicle, although the front license plate was in the vehicle;

n.  Plaintiff asked what a "mopery violation" was, and Defendant Hoskinson failed to inform Plaintiff that a "mopery" was a violation of a fabricated offense;

o.  Defendant Hoskinson then informed Plaintiff that, based in part on Defendant Unknown Mount Prospect Police Officer's information, he was a criminal, that Plaintiff had been arrested in 1977 for "larceny," "impersonating a member," "aggravated mopery" and for "murder in 2012", none of which was true; in fact, Plaintiff had never been arrested, and Defendant Hoskinson and the Defendant Unknown Mount Prospect Police Officer knew that the information that they were relaying to Plaintiff was incorrect;

p.  After giving Plaintiff tickets for having a cover on his back license plate per 625 ILCS 5/3-413(b) and not having the front license plate attached to the front of the vehicle per 625 ILCS 5/3-413(a), Defendant Hoskinson kept Plaintiff's driver's license, telling Plaintiff that he was turning it into the Secretary of State, in violation of 625 ILCS 5/6-308(a) and 725 ILCS 5/110-15, later requiring Plaintiff to pick it up from the police station;

q.  None of the other Defendants stopped, hindered, or informed Defendant Hoskinson that Plaintiff should be medically treated and taken to the hospital and not delayed, but instead assisted Defendant Hoskinson.

13. Plaintiff was taken by ambulance to the hospital and eventually treated for a heart attack.

14. At all times relevant Defendant Village had in force "Field Operations Procedures Mount Prospect Police Department." ("OPS-126")

15. OPS-126 states that:

"POLICY

It will be the policy of the Mount Prospect Police Department to use mobile audio video recording systems (MVR) for legitimate law enforcement purposes.  The

5

use of these systems will comply with statutory regulations and will respect reasonable privacy issues.
***
There will be five main justifications for using video and audio recording systems to record the field activities of patrol officers.  First, these recordings can serve as evidence in support of an offer's actions in field encounters and arrest…Finally, these recordings can be used for management control purposes.  They can preclude, substantiate or unfound complaints about an officer's demeanor, activities or actions.

The primary use of the system will be to record all traffic stops.  It also will be used to review the traffic stop procedures and practices followed by individual patrol officers.
***
Pursuant to Illinois Compiled Statutes 720 ILCS 5/14-3(h), law enforcement officers may video record with audio any oral conversation between a police officer, who has identified his or her office, and a person stopped for an investigation of an offense under the Illinois Vehicle Code or with the consent of person involved in the conversation.
***

### 126.1.4 Processing MVR Media as Evidence

A. MVR media containing information arising from traffic stops such as arrests, physical an/or verbal confrontation, pursuits or other incidents requiring review will be treated as evidence or retained for administrative purposes. The officer operating the MVR will be responsible for notifying the on duty shift supervisor that a recording was made and should be treated as evidence. It will be the responsibility of the on duty shift supervisor to review the MVR media and verify its contents.
***

### 126.1.5 Retention of MVR Media Involving Civil Complaints or Disciplinary Actions

A. The department will retain all MVR media of any incident which results in a sustained civil complaint or disciplinary action for a period of of five (5) years unless a subsequent violation occurs during that period.  If a subsequent violation occurs during the five (5) year retention period, the MVR media of the original incident will be retained for an additional five (5) year period. This process will continue for any additional violations during the officer's tenure with the department.

B. Video media of all formal investigations will be retained for a minimum of three (3) years.
***

### 126.1.6  Operating Procedures

6

\*\*\*

B. Operating Procedures

    1. Officers will record all traffic stops and custodial arrests which arise from the investigation of traffic violations pursuant to Illinois Compiled Statutes 720 ILCS 5/14-3(h). This will apply to both primary and assist cars on qualifying incidents. The recording shall begin no later than when an officer first signals the vehicle to stop, or arrives at the scene of a ongoing traffic stop begun by another officer; and the recording shall continue until the traffic stop is completed and the stopped vehicle departs, or until the officer departs from the stop location. The recording shall include any requests for persons to exit the stopped vehicle, for consent to search the vehicle and any searches or frisks. <u>Under no circumstances will audio taping continue without simultaneous videotaping.</u>" (Emphasis in original.)

16. On May 10, 2015, Defendant MP Police supplied the vehicle in which Defendant Hoskinson and Defendant Unknown Mount Prospect Police Officer, who arrived in a separate vehicle during Plaintiff's traffic stop, were driving with working recording devices that were able to record video and audio.

17. Pursuant to MP Police Field Operations Procedure 126.1.6A. 2., at the beginning of their shifts, Defendant Hoskinson and this Defendant Unknown Mount Prospect Police Officer inspected the mobile vehicle recording system ("MVR") to ensure that system was in good operating condition.

18. Pursuant to MP Police Field Operations Procedure 126.1.6A. 3., at the beginning of their shifts, Defendant Hoskinson and this Defendant Unknown Mount Prospect Police Officer checked that the remote microphone and transmitter were in good working order, and as part of the inspection, Defendant Hoskinson and this Defendant Unknown Mount Prospect Police Officer produced a short video and audio test recording which was played back to ensure the MVR unit was functioning properly.

19. As there was no damage, malfunction or service needed, Defendant Hoskinson and this Defendant Unknown Mount Prospect Police Officer did not need to complete a MVR Work Order and immediately notify an on duty shift supervisor, pursuant to MP Police Field Operations Procedure 126.1.6A. 4.

20. Pursuant to MP Police Field Operations Procedure 126.1.6 B and 720 ILCS 5/14-3(h), Defendant Hoskinson and this Defendant Unknown Mount Prospect Police Officer recorded the traffic stop of Plaintiff, beginning no later than when Defendant Hoskinson first signaled Plaintiff to stop, and when this Defendant Unknown Mount Prospect Police Officer arrived at the scene of the ongoing traffic stop begun by Officer Hoskinson, and continued until the traffic stop was completed and the Defendant Officers departed from the stopped location.

21. Pursuant to MP Police Field Operations Procedure 126.1.4 A, it was the duty of Defendant Hoskinson, this Defendant Unknown Mount Prospect Police Officer and Defendant MP Police, pursuant to a voluntary undertaking, statute, and/or special circumstance, to exercise ordinary care and caution to preserve the integrity of material evidence arising from the subject occurrence and, in particular, to preserve the integrity of the audio recordings.

22. Pursuant to MP Police Field Operations Procedure, the video of the stop was preserved, but not the audio.

23. Plaintiff filed a complaint with the Mount Prospect Police Department on or about May 12, 2015, two days after Plaintiff was stopped.

24. Pursuant to Plaintiff's complaint on May 12, 2015, an investigation was conducted which resulted in Defendant Hoskinson being disciplined.

8

25. Pursuant to MP Police Field Operations Procedure 126.1.5, it was the duty of Defendant MP Police, pursuant to a voluntary undertaking, statute, and/or special circumstance, to exercise ordinary care and caution to preserve the integrity of material evidence arising from the subject occurrence and, in particular, to preserve the integrity of the audio recordings for at least three years**.**

26. Defendant Hoskinson, this Defendant Unknown Mount Prospect Police Officer and Defendant MP Police were guilty of one or more of the following careless, negligent, or intentional acts or omissions that modified and/or destroyed the integrity of the audio recordings:

    a. although the video was preserved, said Defendants destroyed and/or lost audio recordings from Defendant Hoskinson's and this Defendant Unknown Mount Prospect Police Officer's vehicle relating to Plaintiff's stop;

    b. failed to adequately record/document the actual audio recordings before said recordings were recorded over and/or removed and/or destroyed and/or lost;

    c. failed to preserve the integrity of the audio recordings; and/or

    d. otherwise allowed modification/alteration of the condition of the audio recordings.

27. Plaintiff has filed causes of action sounding in negligence and intentional conduct against various Defendants as listed in the above caption and as stated in this Complaint, and the allegations of said Counts are incorporated herein by reference.

28. As a direct and proximate result of one or more of the aforementioned negligent acts or omissions or intentional acts or omissions of Defendant Hoskinson, this Defendant Unknown Mount Prospect Police Officer and Defendant MP Police, Plaintiff has been injured in that his ability to prosecute and enforce his legal rights against all Defendants or any other possible defendants and has been irrevocably prejudiced by the destruction

9

and/or modification and/or loss of the aforesaid material evidence as above described. Specifically, as a result of Defendant Hoskinson, this Defendant Unknown Mount Prospect Police Officer and Defendant MP Police conduct, Plaintiff will be prejudiced in his ability to prosecute these present causes of action against all Defendants and will be unable to prove causes of action against any other possible defendants.

WHEREFORE, Plaintiff asks judgment against Defendant Thomas Hoskinson, this Defendant Unknown Mount Prospect Police Officer, and Defendant Village of Mount Prospect in a sum in excess of the jurisdictional amount of this Court plus the costs of this suit and attorneys' fees, and punitive damages and for such other relief as is just and proper and demands that the issues joined herein be tried by jury.

## COUNT II
## AGAINST OFFICER THOMAS HOSKINSON
## ILLEGAL SEIZURE (42 U.S.C. Sec. 1983)

1- 7. Plaintiff realleges and incorporates herein by reference paragraphs 1-7 of Count I as if fully set forth in full herein.

8. At all times, it was the duty of Defendant MP POLICE to properly train its officers so as to avoid misconduct and the use of unreasonable force.

9. At all times, it was the duty of Defendant MP FIRE to properly train its employees so as to protect people by providing emergency medical service and to put the health and welfare of patients being treated in its ambulances above nonemergency police matters.

10. On May 10, 2015, Plaintiff was driving his vehicle with an ultimate destination of a Mother's Day family get-together.

11. While enroute to his ultimate destination, Plaintiff, who has a history of heart condition, began experiencing atrial fibrillation.

10

12. Defendant Hoskinson began to pull over Plaintiff at or about 300 W. Central, Mount Prospect, Illinois, wherein:

a. Defendant Hoskinson and Defendant Unknown Mount Prospect Officer, who arrived during the traffic stop, recorded the traffic stop of Plaintiff in accordance with department policy;

b. Plaintiff exited his vehicle and informed Defendant Hoskinson that he was experiencing atrial fibrillation and asked for an ambulance;

c. Defendant Hoskinson called for an ambulance and asked Plaintiff for his driver's license and proof of insurance after which time other Defendants Unknown Mount Prospect Officers and Unknown Fire Department Personnel arrived;

d. Plaintiff gave Defendant Hoskinson a valid driver's license and proof of insurance;

e. Defendant Hoskinson then saw coffee makers in the back of Plaintiff's van and said the covering over the merchandise looked like it was covering a dead body;

f. Defendant Hoskinson opined that Plaintiff was a thief and informed Plaintiff that he was being detained;

g. Plaintiff informed Defendant Hoskinson that the items in his vehicle were part of his business and showed Officer Hoskinson his receipts for the merchandise;

h. Plaintiff was asked come out of the ambulance so that Plaintiff's vehicle could be searched; Plaintiff refused to allow a search;

i. Defendant Lloyd Miller of Defendant MP Fire and other Defendants Unknown Fire Department Personnel stopped treating Plaintiff, although recognizing that Plaintiff was experiencing atrial fibrillation and wanted to go to the hospital, so that Defendant Hoskinson could search Plaintiff's vehicle;

j. Defendant Hoskinson searched Plaintiff's vehicle and found only Plaintiff's merchandise, which Plaintiff had receipts for; but Defendant Hoskinson caused another Defendant Unknown Mount Prospect Officer or Defendant Unknown Fire Department Personnel to make a call to the store were the items were bought to verify that Plaintiff bought the items;

k. Defendant Hoskinson then demanded why Plaintiff had water in his vehicle and Plaintiff explained that it was drinking water for Plaintiff to drink;

l.   Defendant Hoskinson then instructed Plaintiff to move his vehicle before he was to get back into the ambulance;

m.   Defendant Hoskinson then informed Plaintiff that he was giving Plaintiff tickets for a mopery violation, having a plastic cover over his license plate, and not having a front license plate on the vehicle, although the front license plate was in the vehicle;

n.   Plaintiff asked what a "mopery violation" was, and Defendant Hoskinson failed to inform Plaintiff that a "mopery" was a violation of a fabricated offense;

o.   Defendant Hoskinson then informed Plaintiff that, based in part on Defendant Unknown Mount Prospect Police Officer's information, he was a criminal, that Plaintiff had been arrested in 1977 for "larceny," "impersonating a member," "aggravated mopery" and for "murder in 2012", none of which was true; in fact, Plaintiff had never been arrested, and Defendant Hoskinson and the Defendant Unknown Mount Prospect Police Officer knew that the information that they were relaying to Plaintiff was incorrect;

p.   After giving Plaintiff tickets for having a cover on his back license plate per 625 ILCS 5/3-413(b) and not having the front license plate attached to the front of the vehicle per 625 ILCS 5/3-413(a), Defendant Hoskinson kept Plaintiff's driver's license, telling Plaintiff that he was turning it into the Secretary of State, in violation of 625 ILCS 5/6-308(a) and 725 ILCS 5/110-15, later requiring Plaintiff to pick it up from the police station;

q.   None of the other Defendants stopped, hindered, or informed Defendant Hoskinson that Plaintiff should be medically treated and taken to the hospital and not delayed, but instead assisted Defendant Hoskinson.

13. Plaintiff was taken by ambulance to the hospital and eventually treated for a heart attack.

14. On May 10, 2015, Defendant Hoskinson stopped Plaintiff because Plaintiff had a covering over his license plate.

15. By making multiple requests that Defendant Hoskinson be able to search Plaintiff's vehicle because Defendant Hoskinson saw coffee makers in the back, Defendant Hoskinson restrained Plaintiff's freedom of movement.

16. By not allowing Plaintiff to leave due to Defendant Hoskinson's show of authority, Defendant Hoskinson restrained Plaintiff's freedom of movement.

17. Defendant Hoskinson's conduct communicated to Plaintiff that Plaintiff was not free to decline Defendant Hoskinson's request.

18. Defendant Hoskinson's conduct communicated to Plaintiff that Plaintiff was not free to terminate the encounter.

19. Defendant Hoskinson did not inform Plaintiff that he was free to go.

20. Plaintiff did not believe that he was free to leave.

21. Defendant Hoskinson transformed a routine traffic stop into a prolonged seizure that was not reasonably related to the circumstances of the initial stop, which was Plaintiff's license plate being covered.

22. Defendant Hoskinson improperly questioned Plaintiff's initial questioning of whether Defendant Hoskinson could search his vehicle and Plaintiff's motives.

23. Plaintiff was conveyed a message by Defendant Hoskinson that a search of Plaintiff's vehicle was required and Plaintiff was under a compulsion to answer Defendant Hoskinson's inquiries as to what was in Plaintiff's vehicle.

24. Defendant Hoskinson's detention lasted longer than was necessary to effectuate the purpose of the stop.

25. Defendant Hosinkson conduct went beyond the least intrusive method to verify or dispel his suspicion when Defendant Hoskinson caused the store where Plaintiff bought the items in his vehicle to be contacted, and extending the length of time until Plaintiff could get medical attention.

26. Defendant Hoskinson's seizure was not reasonable as there was not a balance between the public interest and Plaintiff's right to personal security free from Defendant Hoskinson's arbitrary interference.

27. Defendant Hoskinson, in stopping Plaintiff for an unrelated reason, exercised unbridled authority by continuing to detain Plaintiff unnecessarily.

28. After Plaintiff stated that Defendant Hoskinson could not search his vehicle, but that Plaintiff would show Officer Hoskinson what was in the vehicle, Defendant Hoskinson reached into the vehicle and removed a cover that was over recently purchased items.

29. Defendant Hoskinson prevented Plaintiff from leaving in a timely manner in the ambulance that had been called for Plaintiff so that Defendant Hoskinson could conduct his illegal seizure.

30. The illegal seizure caused Plaintiff's injury of being prevented from getting medical attention and from getting to the hospital via the ambulance and a proximate cause of Plaintiff's damages.

31. As a result of the injury, Plaintiff endured pain and incurred medical expenses.

32. The above-described conduct by Defendant Hoskinson against Plaintiff was without cause or justification and violated Plaintiff's rights pursuant to the Fourth Amendment of the United States Constitution.

WHEREFORE, Plaintiff asks judgment against Defendant Thomas Hoskinson in a sum in excess of the jurisdictional amount of this Court plus the costs of this suit and attorneys' fees, and punitive damages and for such other relief as is just and proper and demands that the issues joined herein be tried by jury.

## COUNT III

14

**AGAINST DEFENDANT THOMAS HOSKINSON, DEFENDANT LLOYD MILLER, DEFENDANTS UNKNOWN MOUNT PROSPECT POLICE OFFICERS, AND DEFENDANTS UNKNOWN FIRE DEPARTMENT PERSONNEL**
**RESTRAINT OF RIGHT OF LIBERTY/FALSE IMPRISONMENT (42 U.S.C. Sec. 1983)**

1-7. Plaintiff realleges and incorporates herein by reference paragraphs 1-7 of Count I as if fully set forth in full herein.

8. At all times, it was the duty of Defendant MP POLICE to properly train its officers so as to avoid misconduct and the use of unreasonable force.

9. At all times, it was the duty of Defendant MP FIRE to properly train its employees so as to protect people by providing emergency medical service and to put the health and welfare of patients being treated in its ambulances above nonemergency police matters.

10. On May 10, 2015, Plaintiff was driving his vehicle with an ultimate destination of a Mother's Day family get-together.

11. While enroute to his ultimate destination, Plaintiff, who has a history of heart condition, began experiencing atrial fibrillation.

12. Defendant Hoskinson began to pull over Plaintiff at or about 300 W. Central, Mount Prospect, Illinois, wherein:

    a. Defendant Hoskinson and Defendant Unknown Mount Prospect Officer, who arrived during the traffic stop, recorded the traffic stop of Plaintiff in accordance with department policy;

    b. Plaintiff exited his vehicle and informed Defendant Hoskinson that he was experiencing atrial fibrillation and asked for an ambulance;

    c. Defendant Hoskinson called for an ambulance and asked Plaintiff for his driver's license and proof of insurance after which time other Defendants Unknown Mount Prospect Officers and Unknown Fire Department Personnel arrived;

    d. Plaintiff gave Defendant Hoskinson a valid driver's license and proof of insurance;

e. Defendant Hoskinson then saw coffee makers in the back of Plaintiff's van and said the covering over the merchandise looked like it was covering a dead body;

f. Defendant Hoskinson opined that Plaintiff was a thief and informed Plaintiff that he was being detained;

g. Plaintiff informed Defendant Hoskinson that the items in his vehicle were part of his business and showed Officer Hoskinson his receipts for the merchandise;

h. Plaintiff was asked come out of the ambulance so that Plaintiff's vehicle could be searched; Plaintiff refused to allow a search;

i. Defendant Lloyd Miller of Defendant MP Fire and other Defendants Unknown Fire Department Personnel stopped treating Plaintiff, although recognizing that Plaintiff was experiencing atrial fibrillation and wanted to go to the hospital, so that Defendant Hoskinson could search Plaintiff's vehicle;

j. Defendant Hoskinson searched Plaintiff's vehicle and found only Plaintiff's merchandise, which Plaintiff had receipts for; but Defendant Hoskinson caused another Defendant Unknown Mount Prospect Officer or Defendant Unknown Fire Department Personnel to make a call to the store were the items were bought to verify that Plaintiff bought the items;

k. Defendant Hoskinson then demanded why Plaintiff had water in his vehicle and Plaintiff explained that it was drinking water for Plaintiff to drink;

l. Defendant Hoskinson then instructed Plaintiff to move his vehicle before he was to get back into the ambulance;

m. Defendant Hoskinson then informed Plaintiff that he was giving Plaintiff tickets for a mopery violation, having a plastic cover over his license plate, and not having a front license plate on the vehicle, although the front license plate was in the vehicle;

n. Plaintiff asked what a "mopery violation" was, and Defendant Hoskinson failed to inform Plaintiff that a "mopery" was a violation of a fabricated offense;

o. Defendant Hoskinson then informed Plaintiff that, based in part on Defendant Unknown Mount Prospect Police Officer's information, he was a criminal, that Plaintiff had been arrested in 1977 for "larceny," "impersonating a member," "aggravated mopery" and for "murder in 2012", none of which was true; in fact, Plaintiff had never been arrested, and Defendant Hoskinson and the Defendant Unknown Mount Prospect Police Officer knew that the information that they were relaying to Plaintiff was incorrect;

16

    p. After giving Plaintiff tickets for having a cover on his back license plate per 625 ILCS 5/3-413(b) and not having the front license plate attached to the front of the vehicle per 625 ILCS 5/3-413(a), Defendant Hoskinson kept Plaintiff's driver's license, telling Plaintiff that he was turning it into the Secretary of State, in violation of 625 ILCS 5/6-308(a) and 725 ILCS 5/110-15, later requiring Plaintiff to pick it up from the police station;

    q. None of the other Defendants stopped, hindered, or informed Defendant Hoskinson that Plaintiff should be medically treated and taken to the hospital and not delayed, but instead assisted Defendant Hoskinson.

13. Plaintiff was taken by ambulance to the hospital and eventually treated for a heart attack.

14. On May 10, 2015, Defendant Hoskinson stopped Plaintiff because Plaintiff had a covering over his license plate.

15. By making multiple requests that Defendant Hoskinson be able to search Plaintiff's vehicle because Defendant Hoskinson saw coffee makers in the back, Defendant Hoskinson restrained Plaintiff's freedom of movement.

16. By not allowing Plaintiff to leave due to Defendant Hoskinson's show of authority, Defendant Hoskinson restrained Plaintiff's freedom of movement.

17. Plaintiff did not believe that he was free to leave.

18. Defendant Hoskinson did not inform Plaintiff that he was free to go.

19. Defendant Hoskinson transformed a routine traffic stop into a prolonged seizure that was not reasonably related to the circumstances of the initial stop.

20. Defendant Hoskinson improperly questioned Plaintiff's initial questioning of whether Defendant Hoskinson could search his vehicle and Plaintiff's motives.

21. After Plaintiff stated that Defendant Hoskinson could not search his vehicle, but that Plaintiff would show Officer Hoskinson what was in the vehicle, Defendant Hoskinson reached into the vehicle and removed a cover that was over recently purchased items.

22. Defendant Hoskinson prevented Plaintiff from leaving in a timely manner in the ambulance that had been called for Plaintiff so that Defendant Hoskinson could conduct his illegal seizure.

23. The illegal seizure caused Plaintiff's injury of being prevented from getting medical attention and from getting to the hospital via the ambulance and a proximate cause of Plaintiff's damages.

24. As a result of the injury, Plaintiff endured pain and incurred medical expenses.

25. The above-described conduct by Defendant Hoskinson against Plaintiff was without cause or justification and violated Plaintiff's rights pursuant to the Fourth Amendment of the United States Constitution.

26. By preventing Plaintiff from leaving in the ambulance, Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel unreasonably restrained Plaintiff of his liberty to go to the hospital and be treated.

27. By causing the traffic stop to become unreasonably protracted, Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel unreasonably restrained Plaintiff of his liberty.

WHEREFORE, Plaintiff asks judgment against Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel in a sum in excess of the jurisdictional amount of this Court plus the

18

costs of this suit and attorneys' fees, and punitive damages and for such other relief as is just

and proper and demands that the issues joined herein be tried by jury.

**COUNT IV**
**AGAINST ALL INDIVIDUAL DEFENDANTS**
**CIVIL CONSPIRACY (42 U.S.C. Sec. 1983)**

1-7. Plaintiff realleges and incorporates herein by reference paragraphs 1-7 of Count I as if
fully set forth in full herein.

8. At all times, it was the duty of Defendant MP POLICE to properly train its officers so as
to avoid misconduct and the use of unreasonable force.

9. At all times, it was the duty of Defendant MP FIRE to properly train its employees so as
to protect people by providing emergency medical service and to put the health and
welfare of patients being treated in its ambulances above nonemergency police matters.

10. On May 10, 2015, Plaintiff was driving his vehicle with an ultimate destination of a
Mother's Day family get-together.

11. While enroute to his ultimate destination, Plaintiff, who has a history of heart condition,
began experiencing atrial fibrillation.

12. Defendant Hoskinson began to pull over Plaintiff at or about 300 W. Central, Mount
Prospect, Illinois, wherein:

    a. Defendant Hoskinson and Defendant Unknown Mount Prospect Officer, who
arrived during the traffic stop, recorded the traffic stop of Plaintiff in accordance
with department policy;

    b. Plaintiff exited his vehicle and informed Defendant Hoskinson that he was
experiencing atrial fibrillation and asked for an ambulance;

    c. Defendant Hoskinson called for an ambulance and asked Plaintiff for his driver's
license and proof of insurance after which time other Defendants Unknown
Mount Prospect Officers and Unknown Fire Department Personnel arrived;

19

d. Plaintiff gave Defendant Hoskinson a valid driver's license and proof of insurance;

e. Defendant Hoskinson then saw coffee makers in the back of Plaintiff's van and said the covering over the merchandise looked like it was covering a dead body;

f. Defendant Hoskinson opined that Plaintiff was a thief and informed Plaintiff that he was being detained;

g. Plaintiff informed Defendant Hoskinson that the items in his vehicle were part of his business and showed Officer Hoskinson his receipts for the merchandise;

h. Plaintiff was asked come out of the ambulance so that Plaintiff's vehicle could be searched; Plaintiff refused to allow a search;

i. Defendant Lloyd Miller of Defendant MP Fire and other Defendants Unknown Fire Department Personnel stopped treating Plaintiff, although recognizing that Plaintiff was experiencing atrial fibrillation and wanted to go to the hospital, so that Defendant Hoskinson could search Plaintiff's vehicle;

j. Defendant Hoskinson searched Plaintiff's vehicle and found only Plaintiff's merchandise, which Plaintiff had receipts for; but Defendant Hoskinson caused another Defendant Unknown Mount Prospect Officer or Defendant Unknown Fire Department Personnel to make a call to the store were the items were bought to verify that Plaintiff bought the items;

k. Defendant Hoskinson then demanded why Plaintiff had water in his vehicle and Plaintiff explained that it was drinking water for Plaintiff to drink;

l. Defendant Hoskinson then instructed Plaintiff to move his vehicle before he was to get back into the ambulance;

m. Defendant Hoskinson then informed Plaintiff that he was giving Plaintiff tickets for a mopery violation, having a plastic cover over his license plate, and not having a front license plate on the vehicle, although the front license plate was in the vehicle;

n. Plaintiff asked what a "mopery violation" was, and Defendant Hoskinson failed to inform Plaintiff that a "mopery" was a violation of a fabricated offense;

o. Defendant Hoskinson then informed Plaintiff that, based in part on Defendant Unknown Mount Prospect Police Officer's information, he was a criminal, that Plaintiff had been arrested in 1977 for "larceny," "impersonating a member," "aggravated mopery" and for "murder in 2012", none of which was true; in fact, Plaintiff had never been arrested, and Defendant Hoskinson and the Defendant

20

Unknown Mount Prospect Police Officer knew that the information that they were relaying to Plaintiff was incorrect;

p.  After giving Plaintiff tickets for having a cover on his back license plate per 625 ILCS 5/3-413(b) and not having the front license plate attached to the front of the vehicle per 625 ILCS 5/3-413(a), Defendant Hoskinson kept Plaintiff's driver's license, telling Plaintiff that he was turning it into the Secretary of State, in violation of 625 ILCS 5/6-308(a) and 725 ILCS 5/110-15, later requiring Plaintiff to pick it up from the police station;

q.  None of the other Defendants stopped, hindered, or informed Defendant Hoskinson that Plaintiff should be medically treated and taken to the hospital and not delayed, but instead assisted Defendant Hoskinson.

13. Plaintiff was taken by ambulance to the hospital and eventually treated for a heart attack.

14. On May 10, 2015, Defendant Hoskinson stopped Plaintiff because Plaintiff had a covering over his license plate.

15. By making multiple requests that Defendant Hoskinson be able to search Plaintiff's vehicle because Defendant Hoskinson saw coffee makers in the back Defendant Hoskinson restrained Plaintiff's freedom of movement.

16. By not allowing Plaintiff to leave due to Defendant Hoskinson's show of authority, Defendant Hoskinson restrained Plaintiff's freedom of movement.

17. Plaintiff did not believe that he was free to leave.

18. Defendant Hoskinson did not inform Plaintiff that he was free to go.

19. Defendant Hoskinson transformed a routine traffic stop into a prolonged seizure that was not reasonably related to the circumstances of the initial stop.

20. Defendant Hoskinson improperly questioned Plaintiff's initial questioning of whether Defendant Hoskinson could search his vehicle and Plaintiff's motives.

21. After Plaintiff stated that Defendant Hoskinson could not search his vehicle, but that Plaintiff would show Officer Hoskinson what was in the vehicle, Defendant Hoskinson reached into the vehicle and removed a cover that was over recently purchased items.

22. Defendant Hoskinson prevented Plaintiff from leaving in a timely manner in the ambulance that had been called for Plaintiff so that Defendant Hoskinson could conduct his illegal seizure.

23. The illegal seizure caused Plaintiff's injury of being prevented from getting medical attention and from getting to the hospital via the ambulance and a proximate cause of Plaintiff's damages.

24. As a result of the injury, Plaintiff endured pain and incurred medical expenses.

25. The above-described conduct by Defendant Hoskinson against Plaintiff was without cause or justification and violated Plaintiff's rights pursuant to the Fourth Amendment of the United States Constitution.

26. By preventing Plaintiff from leaving in the ambulance, Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel unreasonably restrained Plaintiff of his liberty to go to the hospital and be treated.

27. By causing the traffic stop to become unreasonably protracted, Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel unreasonably restrained Plaintiff of his liberty.

28. Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel knowingly and

voluntarily participated in the common scheme of unreasonably protracting the traffic stop, unreasonably restraining Plaintiff of his liberty to go to the hospital and be treated, illegally seizing Plaintiff's property, and harassing Plaintiff by informing Plaintiff that he had a criminal record that included being arrested for murder and aggravated mopery.

29. Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel agreed to accomplish by concerted action this unlawful purpose by alleged lawful means of a traffic stop by Defendant Hoskinson.

30. Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel committed these tortious acts in furtherance of this agreement.

31. Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel kept Plaintiff at the traffic stop for about two hours when they knew that Plaintiff was experiencing atrial fibrillation and that Plaintiff had a history of cardiac conditions, including a heart attack.

32. Plaintiff's injuries were proximately caused by the misconduct of Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel.

WHEREFORE, Plaintiff asks judgment against Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel in a sum in excess of the jurisdictional amount of this Court plus the costs of this suit and attorneys' fees, and punitive damages and for such other relief as is just and proper and demands that the issues joined herein be tried by jury.

**COUNT V**
**AGAINST ALL INDIVIDUAL DEFENDANTS**
**WILFUL AND WANTON MISCONDUCT**

1-7.     Plaintiff realleges and incorporates herein by reference paragraphs 1-7 of Count I

as if fully set forth herein.

8.   At all times, it was the duty of Defendant MP POLICE to properly train its officers so as

to avoid misconduct and the use of unreasonable force.

9.   At all times, it was the duty of Defendant MP FIRE to properly train its employees so as

to protect people by providing emergency medical service and to put the health and

welfare of patients being treated in its ambulances above nonemergency police matters.

10. On May 10, 2015, Plaintiff was driving his vehicle with an ultimate destination of a

Mother's Day family get-together.

11. While enroute to his ultimate destination, Plaintiff, who has a history of heart condition,

began experiencing atrial fibrillation.

12.  Defendant Hoskinson began to pull over Plaintiff at or about 300 W. Central, Mount

Prospect, Illinois, wherein:

    a.   Defendant Hoskinson and Defendant Unknown Mount Prospect Officer, who
arrived during the traffic stop, recorded the traffic stop of Plaintiff in accordance
with department policy;

    b.   Plaintiff exited his vehicle and informed Defendant Hoskinson that he was
experiencing atrial fibrillation and asked for an ambulance;

    c.   Defendant Hoskinson called for an ambulance and asked Plaintiff for his driver's
license and proof of insurance after which time other Defendants Unknown
Mount Prospect Officers and Unknown Fire Department Personnel arrived;

    d.   Plaintiff gave Defendant Hoskinson a valid driver's license and proof of
insurance;

    e.   Defendant Hoskinson then saw coffee makers in the back of Plaintiff's van and
said the covering over the merchandise looked like it was covering a dead body;

24

f.  Defendant Hoskinson opined that Plaintiff was a thief and informed Plaintiff that he was being detained;

g.  Plaintiff informed Defendant Hoskinson that the items in his vehicle were part of his business and showed Officer Hoskinson his receipts for the merchandise;

h.  Plaintiff was asked come out of the ambulance so that Plaintiff's vehicle could be searched; Plaintiff refused to allow a search;

i.  Defendant Lloyd Miller of Defendant MP Fire and other Defendants Unknown Fire Department Personnel stopped treating Plaintiff, although recognizing that Plaintiff was experiencing atrial fibrillation and wanted to go to the hospital, so that Defendant Hoskinson could search Plaintiff's vehicle;

j.  Defendant Hoskinson searched Plaintiff's vehicle and found only Plaintiff's merchandise, which Plaintiff had receipts for; but Defendant Hoskinson caused another Defendant Unknown Mount Prospect Officer or Defendant Unknown Fire Department Personnel to make a call to the store were the items were bought to verify that Plaintiff bought the items;

k.  Defendant Hoskinson then demanded why Plaintiff had water in his vehicle and Plaintiff explained that it was drinking water for Plaintiff to drink;

l.  Defendant Hoskinson then instructed Plaintiff to move his vehicle before he was to get back into the ambulance;

m.  Defendant Hoskinson then informed Plaintiff that he was giving Plaintiff tickets for a mopery violation, having a plastic cover over his license plate, and not having a front license plate on the vehicle, although the front license plate was in the vehicle;

n.  Plaintiff asked what a "mopery violation" was, and Defendant Hoskinson failed to inform Plaintiff that a "mopery" was a violation of a fabricated offense;

o.  Defendant Hoskinson then informed Plaintiff that, based in part on Defendant Unknown Mount Prospect Police Officer's information, he was a criminal, that Plaintiff had been arrested in 1977 for "larceny," "impersonating a member," "aggravated mopery" and for "murder in 2012", none of which was true; in fact, Plaintiff had never been arrested, and Defendant Hoskinson and the Defendant Unknown Mount Prospect Police Officer knew that the information that they were relaying to Plaintiff was incorrect;

p.  After giving Plaintiff tickets for having a cover on his back license plate per 625 ILCS 5/3-413(b) and not having the front license plate attached to the front of the

25

vehicle per 625 ILCS 5/3-413(a), Defendant Hoskinson kept Plaintiff's driver's license, telling Plaintiff that he was turning it into the Secretary of State, in violation of 625 ILCS 5/6-308(a) and 725 ILCS 5/110-15, later requiring Plaintiff to pick it up from the police station;

q. None of the other Defendants stopped, hindered, or informed Defendant Hoskinson that Plaintiff should be medically treated and taken to the hospital and not delayed, but instead assisted Defendant Hoskinson.

13. Plaintiff was taken by ambulance to the hospital and eventually treated for a heart attack.

14. On May 10, 2015, Defendant Hoskinson stopped Plaintiff because Plaintiff had a covering over his license plate.

15. By making multiple requests that Defendant Hoskinson be able to search Plaintiff's vehicle because Defendant Hoskinson saw coffee makers in the back Defendant Hoskinson restrained Plaintiff's freedom of movement.

16. By not allowing Plaintiff to leave due to Defendant Hoskinson's show of authority, Defendant Hoskinson restrained Plaintiff's freedom of movement.

17. Plaintiff did not believe that he was free to leave.

18. Defendant Hoskinson did not inform Plaintiff that he was free to go.

19. Defendant Hoskinson transformed a routine traffic stop into a prolonged seizure that was not reasonably related to the circumstances of the initial stop.

20. Defendant Hoskinson improperly questioned Plaintiff's initial questioning of whether Defendant Hoskinson could search his vehicle and Plaintiff's motives.

21. After Plaintiff stated that Defendant Hoskinson could not search his vehicle, but that Plaintiff would show Officer Hoskinson what was in the vehicle, Defendant Hoskinson reached into the vehicle and removed a cover that was over recently purchased items.

22. Defendant Hoskinson prevented Plaintiff from leaving in a timely manner in the ambulance that had been called for Plaintiff so that Defendant Hoskinson could conduct his illegal seizure.

23. The illegal seizure caused Plaintiff's injury of being prevented from getting medical attention and from getting to the hospital via the ambulance and a proximate cause of Plaintiff's damages.

24. As a result of the injury, Plaintiff endured pain and incurred medical expenses.

25. The above-described conduct by Defendant Hoskinson against Plaintiff was without cause or justification and violated Plaintiff's rights pursuant to the Fourth Amendment of the United States Constitution.

26. By preventing Plaintiff from leaving in the ambulance, Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel unreasonably restrained Plaintiff of his liberty to go to the hospital and be treated.

27. By causing the traffic stop to become unreasonably protracted, Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel unreasonably restrained Plaintiff of his liberty.

28. Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel knowingly and voluntarily participated in the common scheme of unreasonably protracting the traffic stop, unreasonably restraining Plaintiff of his liberty to go to the hospital and be treated,

illegally seizing Plaintiff's property, and harassing Plaintiff by informing Plaintiff that he had a criminal record that included being arrested for murder and aggravated mopery.

29. Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel agreed to accomplish by concerted action this unlawful purpose by alleged lawful means of a traffic stop by Defendant Hoskinson.

30. Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel committed these tortious acts in furtherance of this agreement.

31. Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel kept Plaintiff at the traffic stop for about two hours when they knew that Plaintiff was experiencing atrial fibrillation and that Plaintiff had a history of cardiac conditions, including a heart attack.

32. Plaintiff's injuries were proximately caused by the misconduct of Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel.

33. The misconduct of Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel Defendants was willful and wanton.

WHEREFORE, Plaintiff asks judgment against Defendant Hoskinson and Defendant Miller, Defendants Unknown Mount Prospect Police Officers, and Defendants Unknown Fire Department Personnel in a sum in excess of the jurisdictional amount of this Court plus the

costs of this suit and attorneys' fees, and punitive damages and for such other relief as is just and proper and demands that the issues joined herein be tried by jury.

**COUNT VI**
**AGAINST VILLAGE OF MOUNT PROSPECT AS TO MP POLICE**
***MONELL* LIABILITY**

1-7.    Plaintiff realleges and incorporates herein by reference paragraphs 1-7 of Count I as if fully set forth in full herein.

8.    At all times, it was the duty of Defendant MP POLICE to properly train its officers so as to avoid misconduct and the use of unreasonable force.

9.    At all times, it was the duty of Defendant MP FIRE to properly train its employees so as to protect people by providing emergency medical service and to put the health and welfare of patients being treated in its ambulances above nonemergency police matters.

10.    On May 10, 2015, Plaintiff was driving his vehicle with an ultimate destination of a Mother's Day family get-together.

11.    While enroute to his ultimate destination, Plaintiff, who has a history of heart condition, began experiencing atrial fibrillation.

12.    Defendant Hoskinson began to pull over Plaintiff at or about 300 W. Central, Mount Prospect, Illinois, wherein:

    a.    Defendant Hoskinson and Defendant Unknown Mount Prospect Officer, who arrived during the traffic stop, recorded the traffic stop of Plaintiff in accordance with department policy;

    b.    Plaintiff exited his vehicle and informed Defendant Hoskinson that he was experiencing atrial fibrillation and asked for an ambulance;

    c.    Defendant Hoskinson called for an ambulance and asked Plaintiff for his driver's license and proof of insurance after which time other Defendants Unknown Mount Prospect Officers and Unknown Fire Department Personnel arrived;

d. Plaintiff gave Defendant Hoskinson a valid driver's license and proof of insurance;

e. Defendant Hoskinson then saw coffee makers in the back of Plaintiff's van and said the covering over the merchandise looked like it was covering a dead body;

f. Defendant Hoskinson opined that Plaintiff was a thief and informed Plaintiff that he was being detained;

g. Plaintiff informed Defendant Hoskinson that the items in his vehicle were part of his business and showed Officer Hoskinson his receipts for the merchandise;

h. Plaintiff was asked come out of the ambulance so that Plaintiff's vehicle could be searched; Plaintiff refused to allow a search;

i. Defendant Lloyd Miller of Defendant MP Fire and other Defendants Unknown Fire Department Personnel stopped treating Plaintiff, although recognizing that Plaintiff was experiencing atrial fibrillation and wanted to go to the hospital, so that Defendant Hoskinson could search Plaintiff's vehicle;

j. Defendant Hoskinson searched Plaintiff's vehicle and found only Plaintiff's merchandise, which Plaintiff had receipts for; but Defendant Hoskinson caused another Defendant Unknown Mount Prospect Officer or Defendant Unknown Fire Department Personnel to make a call to the store were the items were bought to verify that Plaintiff bought the items;

k. Defendant Hoskinson then demanded why Plaintiff had water in his vehicle and Plaintiff explained that it was drinking water for Plaintiff to drink;

l. Defendant Hoskinson then instructed Plaintiff to move his vehicle before he was to get back into the ambulance;

m. Defendant Hoskinson then informed Plaintiff that he was giving Plaintiff tickets for a mopery violation, having a plastic cover over his license plate, and not having a front license plate on the vehicle, although the front license plate was in the vehicle;

n. Plaintiff asked what a "mopery violation" was, and Defendant Hoskinson failed to inform Plaintiff that a "mopery" was a violation of a fabricated offense;

o. Defendant Hoskinson then informed Plaintiff that, based in part on Defendant Unknown Mount Prospect Police Officer's information, he was a criminal, that Plaintiff had been arrested in 1977 for "larceny," "impersonating a member," "aggravated mopery" and for "murder in 2012", none of which was true; in fact, Plaintiff had never been arrested, and Defendant Hoskinson and the Defendant

Unknown Mount Prospect Police Officer knew that the information that they were relaying to Plaintiff was incorrect;

p.  After giving Plaintiff tickets for having a cover on his back license plate per 625 ILCS 5/3-413(b) and not having the front license plate attached to the front of the vehicle per 625 ILCS 5/3-413(a), Defendant Hoskinson kept Plaintiff's driver's license, telling Plaintiff that he was turning it into the Secretary of State, in violation of 625 ILCS 5/6-308(a) and 725 ILCS 5/110-15, later requiring Plaintiff to pick it up from the police station;

q.  None of the other Defendants stopped, hindered, or informed Defendant Hoskinson that Plaintiff should be medically treated and taken to the hospital and not delayed, but instead assisted Defendant Hoskinson.

13. Plaintiff was taken by ambulance to the hospital and eventually treated for a heart attack.

14. At all times relevant Defendant Village had in force "Field Operations Procedures Mount Prospect Police Department." ("OPS-126")

15. OPS-126 states that:

"POLICY

It will be the policy of the Mount Prospect Police Department to use mobile audio video recording systems (MVR) for legitimate law enforcement purposes. The use of these systems will comply with statutory regulations and will respect reasonable privacy issues.
***
There will be five main justifications for using video and audio recording systems to record the field activities of patrol officers. First, these recordings can serve as evidence in support of an offer's actions in field encounters and arrest…Finally, these recordings can be used for management control purposes. They can preclude, substantiate or unfound complaints about an officer's demeanor, activities or actions.

The primary use of the system will be to record all traffic stops. It also will be used to review the traffic stop procedures and practices followed by individual patrol officers.
***
Pursuant to Illinois Compiled Statutes 720 ILCS 5/14-3(h), law enforcement officers may video record with audio any oral conversation between a police officer, who has identified his or her office, and a person stopped for an

investigation of an offense under the Illinois Vehicle Code or with the consent of person involved in the conversation.

***

### 126.1.4 Processing MVR Media as Evidence

B. MVR media containing information arising from traffic stops such as arrests, physical an/or verbal confrontation, pursuits or other incidents requiring review will be treated as evidence or retained for administrative purposes. The officer operating the MVR will be responsible for notifying the on duty shift supervisor that a recording was made and should be treated as evidence. It will be the responsibility of the on duty shift supervisor to review the MVR media and verify its contents.

***

### 126.1.5 Retention of MVR Media Involving Civil Complaints or Disciplinary Actions

C. The department will retain all MVR media of any incident which results in a sustained civil complaint or disciplinary action for a period of of five (5) years unless a subsequent violation occurs during that period. If a subsequent violation occurs during the five (5) year retention period, the MVR media of the original incident will be retained for an additional five (5) year period. This process will continue for any additional violations during the officer's tenure with the department.

D. Video media of all formal investigations will be retained for a minimum of three (3) years.

***

### 126.1.6  Operating Procedures

***

B. Operating Procedures

    1. Officers will record all traffic stops and custodial arrests which arise from the investigation of traffic violations pursuant to Illinois Compiled Statutes 720 ILCS 5/14-3(h).  This will apply to both primary and assist cars on qualifying incidents.  The recording shall begin no later than when an officer first signals the vehicle to stop, or arrives at the scene of a ongoing traffic stop begun by another officer; and the recording shall continue until the traffic stop is completed and the stopped vehicle departs, or until the officer departs from the stop location.  The recording shall include any requests for persons to exit the stopped vehicle, for consent to search the vehicle and any searches or frisks.  <u>Under no circumstances will audio taping continue without simultaneous videotaping.</u>" (Emphasis in original.)

16. On May 10, 2015, Defendant MP Police supplied the vehicle in which Defendant Hoskinson and Defendant Unknown Mount Prospect Police Officer, who arrived in a separate vehicle during Plaintiff's traffic stop, were driving with working recording devices that were able to record video and audio.

17. Pursuant to MP Police Field Operations Procedure 126.1.6A. 2., at the beginning of their shifts, Defendant Hoskinson and this Defendant Unknown Mount Prospect Police Officer  inspected the mobile vehicle recording system ("MVR") to ensure that system was in good operating condition.

18. Pursuant to MP Police Field Operations Procedure 126.1.6A. 3., at the beginning of their shifts, Defendant Hoskinson and this Defendant Unknown Mount Prospect Police Officer checked that the remote microphone and transmitter were in good working order,  and as part of the inspection, Defendant Hoskinson and this Defendant Unknown Mount Prospect Police Officer produced a short video and audio test recording which was played back to ensure the MVR unit was functioning properly.

19. As there was no damage, malfunction or service needed, Defendant Hoskinson and this Defendant Unknown Mount Prospect Police Officer did not need to complete a MVR Work Order and immediately notify an on duty shift supervisor, pursuant to MP Police Field Operations Procedure 126.1.6A. 4.

20. Pursuant to MP Police Field Operations Procedure 126.1.6 B and 720 ILCS 5/14-3(h), Defendant Hoskinson and this Defendant Unknown Mount Prospect Police Officer recorded the traffic stop of Plaintiff, beginning no later than when Defendant Hoskinson first signaled Plaintiff to stop, and when this Defendant Unknown Mount Prospect Police Officer arrived at the scene of the ongoing traffic stop begun by Officer

33

Hoskinson, and continued until the traffic stop was completed and the Defendant Officers departed from the stopped location.

21. Pursuant to MP Police Field Operations Procedure 126.1.4 A, it was the duty of Defendant Hoskinson, this Defendant Unknown Mount Prospect Police Officer and Defendant MP Police, pursuant to a voluntary undertaking, statute, and/or special circumstance, to exercise ordinary care and caution to preserve the integrity of material evidence arising from the subject occurrence and, in particular, to preserve the integrity of the audio recordings.

22. Pursuant to MP Police Field Operations Procedure, the video of the stop was preserved, but not the audio.

23. Plaintiff filed a complaint with the Mount Prospect Police Department on or about May 12, 2015, two days after Plaintiff was stopped.

24. Pursuant to Plaintiff's complaint on May 12, 2015, an investigation was conducted which resulted in Defendant Hoskinson being disciplined.

25. Pursuant to MP Police Field Operations Procedure 126.1.5, it was the duty of Defendant MP Police, pursuant to a voluntary undertaking, statute, and/or special circumstance, to exercise ordinary care and caution to preserve the integrity of material evidence arising from the subject occurrence and, in particular, to preserve the integrity of the audio recordings for at least three years.

26. Defendant Hoskinson, this Defendant Unknown Mount Prospect Police Officer and Defendant MP Police were guilty of one or more of the following careless, negligent, or intentional acts or omissions that modified and/or destroyed the integrity of the audio recordings:

    a. although the video was preserved, said Defendants destroyed and/or lost audio recordings from Defendant Hoskinson's and this Defendant Unknown Mount Prospect Police Officer's vehicle relating to Plaintiff's stop;

    b. failed to adequately record/document the actual audio recordings before said recordings were recorded over and/or removed and/or destroyed and/or lost;

    c. failed to preserve the integrity of the audio recordings; and/or

    d. otherwise allowed modification/alteration of the condition of the audio recordings.

27. Plaintiff has filed causes of action sounding in negligence and intentional conduct against various Defendants as listed in the above caption and as stated in this Complaint, and the allegations of said Counts are incorporated herein by reference.

28. As a direct and proximate result of one or more of the aforementioned negligent acts or omissions or intentional acts or omissions of Defendant Hoskinson, this Defendant Unknown Mount Prospect Police Officer and Defendant MP Police, Plaintiff has been injured in that his ability to prosecute and enforce his legal rights against all Defendants or any other possible defendants and has been irrevocably prejudiced by the destruction and/or modification and/or loss of the aforesaid material evidence as above described. Specifically, as a result of Defendant Hoskinson, this Defendant Unknown Mount Prospect Police Officer and Defendant MP Police conduct, Plaintiff will be prejudiced in his ability to prosecute these present causes of action against all Defendants and will be unable to prove causes of action against any other possible defendants.

29. The misconduct of Defendant Hoskinson and Defendants Unknown Mount Prospect Police Officers was a widespread practice that is so permanent and well settled that is constitutes a custom or usage with the force of law, and specifically, but not limited to:

    a.   failing to train its personnel in that Defendant Hoskinson believed it was acceptable conduct to knowingly falsely inform Plaintiff that Plaintiff had a criminal record;

    b.   failing to train its personnel in that Defendant Hoskinson believed it was acceptable conduct to knowingly falsely inform Plaintiff that Plaintiff was being charged with a nonexistent violation of the law;

    c.   failing to train its personnel in that Defendant Hoskinson believed it was acceptable conduct to restrain Plaintiff from obtaining medical treatment for a nonemergency traffic violation; and

    d.   failing to train its personnel in that Defendant Unknown Police Officer who came onto the scene and the Unknown Police Officer who gave Defendant Hoskinson over the police radio false information regarding Plaintiff's background found it to be acceptable conduct to condone and participate in the acts of Defendant Hoskinson while Defendant Hoskinson continued to perform his unnecessary, harassing conduct.

    e.   failing to train its personnel as to the rules and statutes regarding preserving evidence, specifically, preserving audio recordings so that such audio would not be destroyed and/or lost and/or modified;

30. Defendant Village of Mount Prospect engaged in misconduct by tolerating its Officers' misconduct and harassment such that the Village is liable.

31. The Defendant Village of Mount Prospect failed to properly train its police officers and this failure to train amounted to a deliberate indifference to the rights of persons with whom Defendant Officers came into contact with, specifically, Plaintiff, and contributed to the violation of Plaintiff's rights.

WHEREFORE, Plaintiff asks judgment against Village of Mount Prospect in a sum in excess of the jurisdictional amount of this Court plus the costs of this suit and attorneys' fees and for such other relief as is just and proper and demands that the issues joined herein be tried by jury.

**COUNT VII**
**AGAINST VILLAGE OF MOUNT PROSPECT AS TO MP FIRE**
***MONELL* LIABILITY**

1-7.    Plaintiff realleges and incorporates herein by reference paragraphs 1-7 of Count I as if fully set forth in full herein.

8.    At all times, it was the duty of Defendant MP POLICE to properly train its officers so as to avoid misconduct and the use of unreasonable force.

9.    At all times, it was the duty of Defendant MP FIRE to properly train its employees so as to protect people by providing emergency medical service and to put the health and welfare of patients being treated in its ambulances above nonemergency police matters.

10. On May 10, 2015, Plaintiff was driving his vehicle with an ultimate destination of a Mother's Day family get-together.

11. While enroute to his ultimate destination, Plaintiff, who has a history of heart condition, began experiencing atrial fibrillation.

12.  Defendant Hoskinson began to pull over Plaintiff at or about 300 W. Central, Mount Prospect, Illinois, wherein:

    a.  Defendant Hoskinson and Defendant Unknown Mount Prospect Officer, who arrived during the traffic stop, recorded the traffic stop of Plaintiff in accordance with department policy;

    b.  Plaintiff exited his vehicle and informed Defendant Hoskinson that he was experiencing atrial fibrillation and asked for an ambulance;

    c.  Defendant Hoskinson called for an ambulance and asked Plaintiff for his driver's license and proof of insurance after which time other Defendants Unknown Mount Prospect Officers and Unknown Fire Department Personnel arrived;

    d.  Plaintiff gave Defendant Hoskinson a valid driver's license and proof of insurance;

    e.  Defendant Hoskinson then saw coffee makers in the back of Plaintiff's van and said the covering over the merchandise looked like it was covering a dead body;

f.  Defendant Hoskinson opined that Plaintiff was a thief and informed Plaintiff that he was being detained;

g.  Plaintiff informed Defendant Hoskinson that the items in his vehicle were part of his business and showed Officer Hoskinson his receipts for the merchandise;

h.  Plaintiff was asked come out of the ambulance so that Plaintiff's vehicle could be searched; Plaintiff refused to allow a search;

i.  Defendant Lloyd Miller of Defendant MP Fire and other Defendants Unknown Fire Department Personnel stopped treating Plaintiff, although recognizing that Plaintiff was experiencing atrial fibrillation and wanted to go to the hospital, so that Defendant Hoskinson could search Plaintiff's vehicle;

j.  Defendant Hoskinson searched Plaintiff's vehicle and found only Plaintiff's merchandise, which Plaintiff had receipts for; but Defendant Hoskinson caused another Defendant Unknown Mount Prospect Officer or Defendant Unknown Fire Department Personnel to make a call to the store were the items were bought to verify that Plaintiff bought the items;

k.  Defendant Hoskinson then demanded why Plaintiff had water in his vehicle and Plaintiff explained that it was drinking water for Plaintiff to drink;

l.  Defendant Hoskinson then instructed Plaintiff to move his vehicle before he was to get back into the ambulance;

m. Defendant Hoskinson then informed Plaintiff that he was giving Plaintiff tickets for a mopery violation, having a plastic cover over his license plate, and not having a front license plate on the vehicle, although the front license plate was in the vehicle;

n.  Plaintiff asked what a "mopery violation" was, and Defendant Hoskinson failed to inform Plaintiff that a "mopery" was a violation of a fabricated offense;

o.  Defendant Hoskinson then informed Plaintiff that, based in part on Defendant Unknown Mount Prospect Police Officer's information, he was a criminal, that Plaintiff had been arrested in 1977 for "larceny," "impersonating a member," "aggravated mopery" and for "murder in 2012", none of which was true; in fact, Plaintiff had never been arrested, and Defendant Hoskinson and the Defendant Unknown Mount Prospect Police Officer knew that the information that they were relaying to Plaintiff was incorrect;

p.  After giving Plaintiff tickets for having a cover on his back license plate per 625 ILCS 5/3-413(b) and not having the front license plate attached to the front of the vehicle per 625 ILCS 5/3-413(a), Defendant Hoskinson kept Plaintiff's driver's

license, telling Plaintiff that he was turning it into the Secretary of State, in violation of 625 ILCS 5/6-308(a) and 725 ILCS 5/110-15, later requiring Plaintiff to pick it up from the police station;

q. None of the other Defendants stopped, hindered, or informed Defendant Hoskinson that Plaintiff should be medically treated and taken to the hospital and not delayed, but instead assisted Defendant Hoskinson.

13. Plaintiff was taken by ambulance to the hospital and eventually treated for a heart attack.

14. Plaintiff has filed causes of action sounding in negligence and intentional conduct against various Defendants as listed in the above caption and as stated in this Complaint, and the allegations of said Counts are incorporated herein by reference.

15. The misconduct of Defendant Lloyd and Unknown Fire Department Personnel was a widespread practice that is so permanent and well settled that is constitutes a custom or usage with the force of law, and specifically, but not limited to:

a. failing to train its personnel in that multiple Fire Department personnel were at the scene, including Defendant Lloyd, and failed to assist Plaintiff with medical treatment in the ambulance but instead allowed Defendant Hoskinson to unnecessarily restrain and harass Plaintiff for a nonemergency traffic stop; and

b. assisting Defendant Hoskinson in his unreasonable inquiry into the contents of Plaintiff's vehicle.

16. Defendant Fire Department Personnel's misconduct was a widespread practice that is so permanent and well settled that it constitutes a custom or usage with the force of law.

17. Defendant Village of Mount Prospect engaged in misconduct by tolerating its Personnel's misconduct and harassment such that the Village is liable.

18. The Defendant Village of Mount Prospect failed to properly train its Personnel and this failure to train amounted to a deliberate indifference to the rights of persons with

whom Defendant Fire Department Personnel came into contact with, specifically, Plaintiff, and contributed to the violation of Plaintiff's rights.

WHEREFORE, Plaintiff asks judgment against Village of Mount Prospect in a sum in excess of the jurisdictional amount of this Court plus the costs of this suit and attorneys' fees and for such other relief as is just and proper and demands that the issues joined herein be tried by jury.

Respectfully submitted,

ZANE D. SMITH & ASSOCIATES, LTD.

By:    /s/ Zane D. Smith
Zane D. Smith, One of Plaintiff's Attorneys

ZANE D. SMITH & ASSOCIATES, LTD.
221 North LaSalle Street - Suite 1320
Chicago, Illinois 60601
Phone: (312) 245-0031
zane@zanesmith.com

LAW OFFICE OF SHEILA A. GENSON, LTD.
1699 E. Woodfield Rd., Ste. 400
Schaumburg, IL  60173
Phone: 847-466-7788
gensonlaw@gmail.com

## CERTIFICATE OF SERVICE

I, Zane D. Smith, an attorney, on oath state that a true and correct copy of the above document electronically filed with the Clerk of the Court on September 28, 2016, using the CM/ECF system which will send notification of such filing(s) to all attorneys of record. Under the penalties of perjury, I certify that the above statements set forth herein are true and correct.

/s/ Zane D. Smith
Zane D. Smith